## Impact Sports Basketball, LLC ("ISB")
## Term Sheet/Agreement ("Agreement")

*Prepared for Brian Elfus ("BE") & Michael Siegel ("MS"), who may collectively be referred to as "ESM"*
*ISB, ESM, BE & MS may collectively be referred to as the "Parties" or individually as a "Party"*

Definitions:

"ISB Year" or "ISB Years" – twelve month period(s) from June 1st to May 31st; First ISB Year shall be June 1, 2010 to May 31, 2011; Second ISB Year shall be June 1, 2011 to May 31, 2012 etc.

"Existing Client" or "Existing Clients" – prior client(s) of ESM listed on Addendum A, who are now considered clients of ISB.

"Additional Client" or "Additional Clients" – potential or actual client(s) of ISB in which ESM is entitled to a percentage of ISB Profits related to such clients.

"Future Client" or "Future Clients" – potential or actual client(s) of ISB secured by ESM which are not Existing Clients.

"Existing Client ISB Profit" – Seventy Five Percent (75%) to ESM and Twenty Five Percent (25%) to ISB.

"Future Client ISB Profit" – Sixty Percent (60%) to ESM and Forty Percent (40%) to ISB.

"ESM Payment" – singular payment of Fifty Thousand Dollars ($50,000.00) previously issued to ESM during 2010 of the First ISB Year.

"BE Operational Budget" – funds allocated during an applicable ISB Year generated from revenues of Existing Clients, Future Clients and Additional Clients, as applicable, for BE to maintain, develop and recruit clients and perform day-to-day duties for ISB; the Operational Budget includes without limitation expenses associated with advertising and marketing; brochures and packages; client development and maintenance; computers/laptops; dues and subscriptions; licenses and permits; office supplies and furniture; postage and courier service; and telephone, both cell and office.

"MS Operational Budget" – funds allocated during an applicable ISB Year generated from revenues of Existing Clients, Future Clients and Additional Clients, as applicable, for MS to maintain, develop and recruit clients and perform day-to-day duties for ISB; the Operational Budget includes without limitation expenses associated with advertising and marketing; brochures and packages; client development and maintenance; computers/laptops; dues and subscriptions; licenses and permits; office supplies and furniture; postage and courier service; and telephone, both cell and office.

"BE Compensation" – funds allocated during an applicable ISB Year generated from revenues of Existing Clients, Future Clients and Additional Clients to compensate BE on a monthly basis to maintain, develop and recruit clients and to perform day-to-day duties for ISB.

"MS Compensation" – funds allocated during an applicable ISB Year generated from revenues of Existing Clients, Future Clients and Additional Client to compensate MS on a monthly basis to maintain, develop and recruit clients and to perform day-to-day duties for ISB.

"BE Budget" - BE Operational Budget + BE Compensation during an applicable ISB Year.

"MS Budget" - MS Operational Budget + MS Compensation during an applicable ISB Year.

"ESM Budget" - BE Operational Budget + BE Compensation + MS Operational Budget + MS Compensation during

1

ESM/BE ESM/MS  BE  MS  ISB

an applicable ISB Year.

"ESM Revenue" or "ESM Revenues" – revenues derived from ESM and attributable to Existing Clients, Future Clients and Additional Clients, as applicable for an applicable ISB Year or ISB Years.

"ISB Revenue" or "ISB Revenues" – revenues of ISB attributable to Existing Clients, Future Clients and Additional Clients, as applicable for an applicable ISB Year or ISB Years.

"ESM Profit" or "ESM Profits" – the amount by which ESM Revenues exceed the aggregate total of BE Budget and MS Budget for an applicable ISB Year or ISB Years; ESM Profit is equivalent to an "ESM Net Contract Fee," defined as any fee generated via ESM Revenue successfully received by ISB derived from the representation of a client of ISB for employment and marketing contract negotiation services minus all expenses, including but not limited to travel-related, training-related, maintenance expenses and other expenses associated with client recruiting/development and maintenance; ESM Profits are calculated on an aggregate ISB client basis, not a per ISB client basis, and Existing Clients and Future Clients (including "Future Client/Thornton") shall collectively be calculated on an aggregate basis separate and apart from the aggregate calculation related to and involving all other clients. ESM Profits shall be payable to ESM and any division thereof shall be solely determined by BE and MS.

"ISB Profit" or "ISB Profits" – the amount by which ISB Revenues for an applicable ISB Year exceed the aggregate total of ISB expenses; ISB profits are calculated on an aggregate ISB client basis, not a per ISB client basis, and Existing Clients and Future Clients (including "Future Client/Thornton") shall collectively be calculated on an aggregate basis separate and apart from the aggregate calculation related to and involving all other clients. The Parties acknowledge that whenever ISB Profits are used in the context of ESM, BE and/or MS receiving ISB Profits, ISB Profits are referring to amounts that ESM, BE and/or MS are entitled to receive pursuant to this Agreement, after all aggregate losses attributable to ESM (and/or BE and/or MS as the case may be) have been recouped by ISB.

In consideration of the mutual covenants contained herein, the Parties agree as follows:

I. **Effective Dates**

The effective date of this Agreement shall be December 15, 2010 ("Effective Date"), however, for purposes of the termination/dissolution schedule contained herein, the applicable termination/dissolution effective date is October 1, 2011 ("Termination Effective Date").

II. **Joint Venture**

Notwithstanding any provision or language that may be contrary or contradictory in the Operating Agreement for Elfus-Siegel Management dated December 16, 2004 and in any Addendum to the Operating Agreement for Elfus-Siegel Management (collectively, "Operating Agreement"), MS and BE, both individually and collectively, and ESM agree to the following:

- Approval of ESM as a joint venture with ISB.
- Any and all efforts performed on behalf of ISB by ESM, and BE and MS individually, are not and shall not be considered in the future a "competing activity" with ESM.
- All Existing Clients, Future Clients and Additional Clients are and shall be considered in the future, clients of ISB.
- If either BE and/or MS sign a player and/or appear on a representation agreement for a player, then such player shall be considered a client of ISB.
- The Parties acknowledge that with the joint venture, BE and MS are not employees of ISB for the purposes of applying the following: (i) the Fair Labor Standards Act; (ii) minimum wage and overtime payments; (iii) Federal Insurance Contribution Act; (iv) the Social Security Act; (v) the Federal Unemployment Tax Act; (vi)

2

ESM/BE  ESM/MS  BE  MS  ISB

the state of Florida revenue and taxation law; (vii) the state of Florida workers' compensation law; and (viii) and the state of Florida unemployment insurance law.

In addition, with the exception of the above, this Agreement is not intended to affect or modify the terms and conditions of the Operating Agreement and the rights of BE and MS as it relates to BE and MS thereunder, regardless of whose name may appear on an employment or representation agreement with an Existing Client, Future Client or Additional Client.

### III. MS and BE Duties

MS and BE acknowledge that each has reviewed his duties with a principal of ISB prior to execution of this Agreement.

### IV. General Premise – BE Budget and MS Budget

ESM, BE and MS each acknowledge that for each ISB Year as applicable, the ESM Budget, the BE Budget and MS Budget, and the components of the ESM Budget, BE Budget and MS Budget, shall be funded exclusively and equally by ESM Revenues. BE and MS shall each have their own budgets and separate accounting associated with such budgets for each ISB Year beginning with the Second ISB Year.

BE and MS each acknowledge that prior to any BE Compensation and MS Compensation increases respectively or distribution of ESM Profits and/or ISB Profits respectively, any and all aggregate operating losses of ESM (and/or BE and/or MS, as the case may be), including without limitation the ESM Payment as referenced herein, must be recouped by ISB in full. All ESM Revenues are first allocated toward eliminating all aggregate operating losses of ISB that are attributable to ESM (and/or BE and/or MS, as the case may be). Notwithstanding the above, due to the separate budgets as described above, losses are divisible as per each applicable Party's budget. The Parties acknowledge that neither BE or MS can individually experience and benefit from any increases in compensation, ESM Profits and/or ISB Profits whatsoever, directly or indirectly via the Operating Agreement or this Agreement or otherwise, until any and all applicable aggregate operating losses of ESM (and/or BE and/or MS, as the case may be), including without limitation the ESM Payment as referenced herein, are recouped by ISB in full. Any revenue that BE and/or MS may be entitled to pursuant to the Operating Agreement must be paid and directed to ISB if ESM (and/or BE and/or MS, as the case may be) is operating at an aggregate loss as described herein.

In addition, as a starting point for each ISB Year based on ESM Revenue generated from ESM Existing Clients, BE Compensation and MS Compensation shall each be Eighty Thousand Dollars ($80,000.00) and the BE Operational Budget and MS Operational Budget shall each be Forty Thousand Dollars ($40,000.00). Therefore, the BE Budget and MS Budget shall each begin at One Hundred Twenty Thousand Dollars ($120,000.00). However, notwithstanding this starting point, the total BE Budget and MS Budget and the components of the BE Budget and MS Budget, including without limitation the aforementioned starting point, shall be determined in good faith by the Parties during each ISB Year and reviewed and adjusted as necessary by the Parties throughout each ISB Year to consider changes in anticipated ESM Revenue and market circumstances and conditions. The Parties shall review and implement applicable adjustments to the BE Budget and MS Budget respectively on or before the following dates of each ISB Year: 6/1; 10/31; 12/31; 2/28; and 4/30. Furthermore, the Parties acknowledge that once the total BE Budget and MS Budget has each been established, BE and MS shall each have the discretion to reasonably determine the specific allocation of the BE Budget and MS Budget respectively, when such BE Budget and MS Budget is solely based upon ESM Revenue generated from ESM Existing Clients.

The Parties acknowledge, represent and warrant the following: a) that ESM, BE and/or MS are not eligible to receive any ESM Profits and/or ISB profits until all aggregate losses of ESM (and/or BE and/or MS, as the case may be), including without limitation the ESM Payment as referenced herein, are recouped in full; b) that any unused portion of the BE Budget and MS Budget respectively must be allocated, on a first priority basis, toward ISB recouping any and all applicable aggregate operating losses attributable to ESM (and/or BE and/or MS, as the case may be), including without limitation repayment of the ESM Payment as described herein; and c) if BE and/or MS is not operating at an aggregate loss and therefore has repaid ISB the applicable sums in its entirety and there is an unused portion of the BE Budget and/or MS Budget respectively, then BE and/or MS may be paid such unused portion in its entirety, if and only if such unused portion was a result of ESM Revenues generated from ESM Existing Clients, as opposed to such unused portion

3

ESM/BE  ESM/MS  BE  MS  ISB

being characterized as ESM Profits or ISB Profits and subject to the terms of this Agreement. For example and for illustrative purposes only, if BE or MS has (i) repaid his portion of the ESM Payment as referenced herein; (ii) is not otherwise operating at an aggregate loss; and (iii) has Six Thousand Dollars ($6,000.00) generated from Existing Clients remaining in the BE Budget or MS Budget as applicable in any given ISB Year, then BE or MS as applicable may choose to have such sum paid to himself at the end of the given ISB Year.

The Parties acknowledge that One Hundred Twenty Thousand Dollars ($120,000.00) each for the BE Budget and MS Budget represents the maximum revenue derived from ESM Existing Clients as of the Effective Date of this Agreement. The Parties further acknowledge that any ESM Revenues above Two Hundred Forty Thousand Dollars ($240,000.00) shall be distributed accordingly pursuant to this Agreement.

Example, for illustrative purposes only (and therefore the Second ISB Year totals, calculations and projections referenced below may not be accurate):

The Second ISB Year includes a NBA Lockout and MS Compensation and BE Compensation shall total approximately Thirty Three Thousand Three Hundred and Thirty Five Dollars ($33,335.00) each through 10/31. ESM Revenues derived from non-NBA sources as of 10/31 are projected to be Ninety Thousand Dollars ($90,000.00) for the Second ISB Year. For the purposes of this illustration, Five Thousand Dollars ($5,000.00) has been exhausted from both the MS Operational Budget and the BE Operational Budget as of 10/31. Therefore, as of 10/31, the MS Budget and the BE Budget each totals Thirty Eight Thousand Three Hundred and Thirty Five Dollars ($38,335.00). If the NBA Lockout remains in place for the entire Second ISB Year, then the MS Budget and the BE Budget shall each have Six Thousand Six Hundred Sixty Five Dollars ($6,665.00) remaining for the remainder of the Second ISB Year to apply toward the MS Operational Budget and MS Compensation and the BE Operational Budget and BE Compensation respectively. The Parties shall mutually determine in good faith the amount necessary to allocate toward the MS Operational Budget and the BS Operational Budget respectively on a monthly basis in order to potentially maximize, if possible, MS Compensation and BE Compensation respectively on a monthly basis.

MS and BE acknowledge that if there is a NBA Lockout as of 11/1, then the MS Budget and the BE Budget shall be adjusted as if the NBA Lockout will continue for the entire Second ISB Year (and beyond as applicable). If the NBA Lockout does not remain in place for the entire Second ISB Year (and beyond as applicable) and the 2011-2012 NBA season (or a future season) resumes at some point, then the MS Budget and the BE Budget shall be adjusted at that time when ESM Revenues derived from Existing Clients in the NBA can be quantified. Under this post-NBA Lockout scenario, the Parties shall mutually determine in good faith the amount necessary to allocate toward the MS Operational Budget and the BS Operational Budget respectively on a monthly basis in order to maximize MS Compensation and BE Compensation respectively on a monthly basis.

V.   ESM Payment

BE and MS agree to be equally responsible for the remaining portion of the ESM Payment that needs to be recouped/recovered by ISB. As of the end of the First ISB Year, the remaining ESM Payment is Forty Four Thousand Four Hundred Forty Dollars and Thirty Cents ($44,440.30). Therefore, BE is responsible to repay ISB Twenty Two Thousand Two Hundred Twenty Dollars and Fifteen Cents ($22,220.15) and MS is responsible to repay ISB Twenty Two Thousand Two Hundred Twenty Dollars and Fifteen Cents ($22,220.15). The Parties may choose to further examine the remaining ESM Payment in good faith if there is a reasonable belief that the remaining ESM Payment as identified above has not been accurately calculated. BE and MS both acknowledge, represent and warrant that, until their individual sums as referenced above are repaid in full, BE and MS are not eligible to receive, even if revenue is based on ESM Existing Clients, any a) sums above BE Compensation and MS Compensation respectively; or b) ISB Profits and/or ESM Profits respectively.

Example:

If (i) both BE and MS have repaid their respective portions of the ESM Payment, (ii) BE is operating at an aggregate loss, (iii) MS is operating at or below MS Budget and (iv) there are ESM Profits and/or ISB Profits, MS shall be able to receive his share of ESM Profits and/or ISB Profits while BE's share of ESM Profits and/or ISB Profits shall go toward repaying

4

ESM/BE   ESM/MS   BE   MS   ISB

his aggregate operating losses.

## VI. BE Compensation and MS Compensation

MS and BE each acknowledge that BE and MS are responsible for their own taxes and that BE Compensation and MS Compensation may be subject to W2 related tax withholding, if applicable. In addition, BE and MS may request, in their sole but reasonable discretion, to receive compensation above BE Compensation and MS Compensation in each ISB year as bonus/profit distributions for tax purposes and ISB shall reasonably accommodate such request in good faith.

## VII. Existing Clients, Future Clients and Additional Clients

For purposes of calculating and distributing ISB Profits and ESM Profits as applicable, the following classifications of clients are governed by this Agreement (please note that, for clarity purposes and the avoidance of doubt, if ESM chooses to incur any expenses pursuant to any of the classifications below as applicable, then such expenses shall include all related expenses, both retroactive and prospective, as applicable):

- Existing Client – Tyrus Thomas of the NBA's Charlotte Hornets is an example of an Existing Client; see Addendum A for all other Existing Clients; former clients of ESM, with the exception of Marcus Thornton of the NBA's Sacramento Kings ("Thornton"), see below, who become clients of ISB after the Effective Date of this Agreement, shall be treated as an Existing Client.
- Future Client – Glen Dandridge, Cedric Jackson and Julien Mills are examples of Future Clients.
- Additional Clients
  - "Preferred Tree/Thornton" scenario involving Thornton with no involvement of ESM; ESM may choose one of the two methods of calculation in its sole discretion.
    - Ten Percent (10%) of the ISB Profits attributed to Marcus Thornton without ESM incurring any expenses.
    - Twenty Percent (20%) of the ISB Profits attributed to Marcus Thornton with ESM incurring Ten Percent (10%) of the total expenses attributed to Thornton. If such expense contribution is not available in the BE Budget and/or MS Budget, such expense contribution would be immediate either in the form of forgone BE Compensation and/or MS Compensation or actual payment to ISB by BE and/or MS, in which case ESM, as applicable, shall recover/recoup its expenses in the same manner as ISB prior to any distribution of ISB Profits. If the decision is reached for ESM to incur applicable expenses, then ESM shall be able to give its input in good faith (and such input shall be considered in good faith) regarding the accounting attributable to Thornton.
    - "Preferred Tree" scenario is always available regardless of involvement of ESM.
    - "Involvement" shall be mutually determined in good faith by the Parties.
  - "Future Client/Thornton" scenario involving Thornton with involvement of ESM.
    - If BE and/or MS successfully secure Thornton for ISB as the lead recruiter (and ISB is not significantly involved and/or is not the primary recruiter), Thornton shall be treated as a Future Client with a newly created preferred ISB Profit division of Two-Thirds (66.67%) for ESM and One-Third (33.33%) for ISB if BE and/or MS, whomever is the lead recruiter, is operating within the BE Budget and/or MS Budget, as applicable. Under such scenario, ESM incurs One Hundred Percent (100%) of the expenses attributable to Thornton, just as it would as if Thornton was treated as a normally classified Future Client. [If the lead recruiter is not operating within the BE Budget and/or MS Budget, as applicable, then Thornton shall be classified as an "Excess Budget" scenario – see below].

5

ESM/BE ESM/MS   BE   MS   ISB

- The classification of "lead recruiter" shall be mutually determined in good faith by the Parties.
- If ISB successfully secures Thornton for ISB and BE and/or MS assist ISB as the secondary recruiter, then Thornton shall be treated as an Additional Client with a created preferred ISB Profit division of Seventy Percent (70%) for ISB and Thirty Percent (30%) for ESM. Under such scenario, ESM shall incur Thirty Percent (30%) of the expenses attributable to Thornton and must operate within the BE Budget and/or MS Budget. If such expense contribution is not available in the BE Budget and/or MS Budget, such expense contribution would be immediate either in the form of forgone BE Compensation and/or MS Compensation or actual payment to ISB by BE and/or MS, in which case ESM, as applicable, shall recover/recoup its expenses in the same manner as ISB prior to any distribution of ISB Profits. If the decision is reached for ESM to incur applicable expenses, then ESM shall be able to give its input in good faith (and such input shall be considered in good faith) regarding the accounting attributable to Thornton. ESM, in its sole discretion, can choose to not incur the expenses referenced above and therefore, classify Thornton as an "Excess Budget" scenario – see below.

- "Excess Budget" scenario whereby ESM desires for ISB to represent a potential Additional Client and ESM desires to contribute funds attributable to the potential Additional Client, but funds allocated toward such potential Additional Client would exceed the BE Budget and/or the MS Budget as applicable.
  - ESM may contribute up to Seventy Percent (70%) of the expenses attributed to an Additional Client to receive a maximum of Seventy Five (75%) of the applicable ISB Profits derived from an "Excess Budget" Additional Client. The percentage of expenses contributed by ESM equals the percentage of ISB Profits received by ESM, plus Five Percent (5%). For example, if ESM contributes Ten Percent (10%) of expenses attributed to such Additional Client, ESM shall receive Fifteen Percent (15%) of the applicable ISB Profits. If ESM contributes Fifteen Percent (15%) of expenses attributed to such Additional Client, ESM shall receive Twenty Percent (20%) of the applicable ISB Profits. Such expense contribution would be immediate either in the form of forgone BE Compensation and/or MS Compensation or actual payment to ISB by BE and/or MS.
  - The Parties acknowledge that the minimum expense contribution by ESM is Five Percent (5%), which translates to a receipt of Ten Percent (10%) of the applicable ISB Profits.
  - ESM shall notify ISB as soon as practically possible of the desire to classify a potential Additional Client as an "Excess Budget" Additional Client and at what percentage it desires to participate with the applicable expenses. In the alternative, such potential Additional Client may be classified as a "Converted Tree" scenario – see below.
  - ISB, with the good faith input of ESM, shall determine in its sole discretion as to whether it wishes to pursue any "Excess Budget" or "Converted Tree" scenarios.
  - If the decision to classify a potential Additional Client as an "Excess Budget" Additional Client is reached and therefore, ESM is incurring applicable expenses, then ESM shall be able to give its input in good faith (and such input shall be considered in good faith) regarding the accounting attributable to such "Excess Budget" Additional Client.
  - ESM, as applicable, shall recover/recoup its expenses in the same manner as ISB prior to any distribution of ISB Profits derived from an "Excess Budget" Additional Client. The repayment schedule to the applicable Party shall be determined in good faith by the Parties, however, priority repayment shall be granted to the Party who has paid the majority of expenses.

6

ESM/BE   ESM/MS   BE   MS   ISB

- "Pure Tree" scenario whereby ESM shall receive Five Percent (5%) of the ISB Profits derived from a "Pure Tree" Additional Client.
  - "Pure Tree" scenarios occur when ISB secures clients originating from an independent contractor or source referred to ISB by ESM and any independent contractor or source twice removed from the original independent contractor or source. For example, if ESM refers independent contractor A to ISB and from independent contractor A, independent contractor B is referred and from independent contractor B, independent contractor C is referred, then ESM shall receive Five Percent (5%) of the ISB Profits derived from Additional Clients secured by independent contractors A, B and C.
  - "Pure Tree" scenarios shall be mutually determined by the Parties in good faith.
  - ESM shall not be responsible for any expenses attributable to a "Pure Tree" Additional Client and there is no ability to participate or incur expenses to receive a higher percentage than Five Percent (5%).
  - Examples of "Pure Tree" Additional Clients include but may not be limited to the following: Ike Diogu, Kevin Galloway, Dexter Pittman, Richard Roby, Jarvis Varnado, Terrico White.
- "Converted Tree" scenario whereby ESM desires for ISB to represent a potential Additional Client and ESM desires to not contribute funds attributable to the potential Additional Client because funds allocated toward such potential Additional Client would exceed the BE Budget and/or the MS Budget as applicable.
  - ESM shall receive Five Percent (5%) of the ISB Profits derived from a "Converted Tree" Additional Client.
  - "Converted Tree" scenarios occur when ESM determines that a potential Additional Client shall not or cannot be classified as an "Excess Budget" Additional Client.
  - ESM shall not be responsible for any expenses attributable to a "Converted Tree" Additional Client and there is no ability to participate or incur expenses to receive a higher percentage than Five Percent (5%).
  - BE and/or MS shall, at the sole discretion of ISB, be reimbursed and/or have their budget credited for any expenses incurred toward the recruitment of a "Converted Tree" Additional Client.
  - "Converted Tree" scenarios shall be mutually determined by the Parties in good faith.
  - Example of "Converted Tree" Additional Client is Kawhi Leonard.
- "Hybrid Tree" scenario whereby ESM can receive an additional Five Percent (5%) to Ten Percent (10%) above the Five Percent (5%) "Pure Tree" scenario, for a maximum of Fifteen (15%) of the ISB Profits derived from a "Hybrid Tree" Additional Client.
  - "Hybrid Tree" scenarios occur when ESM is asked to participate in the recruiting process at a significant and meaningful level by ISB and BE and/or MS serves as the lead recruiter or co-lead recruiter.
  - ESM shall be responsible for Five Percent (5%) to Ten Percent (10%) of the expenses, to be determined by ESM in its sole but reasonable discretion, attributable to a "Hybrid Tree" Additional Client and there is no ability to participate or incur expenses to receive a higher percentage than Fifteen Percent (15%).
  - The characterization of "significant and meaningful level" and classification of "lead recruiter" or "co-lead recruiter" shall be mutually determined in good faith by the Parties.
  - ESM shall notify ISB as soon as practically possible of the desire to classify a potential Additional Client as a "Hybrid Budget" Additional Client and at what percentage it

ESM/BE  ESM/MS  BE  MS  ISB

- desires to participate with the applicable expenses. In the alternative, such potential Additional Client may be classified as a "Pure Tree" scenario.
- If such expense contribution is not available in the BE Budget and/or MS Budget, such expense contribution would be immediate either in the form of forgone BE Compensation and/or MS Compensation or actual payment to ISB by BE and/or MS.
- If the decision to classify a potential Additional Client as a "Hybrid Budget" Additional Client is reached and therefore, ESM is incurring applicable expenses, then ESM shall be able to give its input in good faith (and such input shall be considered in good faith) regarding the accounting attributable to such "Hybrid Budget" Additional Client.
- ESM, as applicable, shall recover/recoup its expenses in the same manner as ISB prior to any distribution of ISB Profits derived from a "Hybrid Budget" Additional Client. The repayment schedule to the applicable Party shall be determined in good faith by the Parties, however, priority repayment shall be granted to the Party who has paid the majority of expenses.

In the event that the Parties decide to create a new category of clients, including but not limited to coaches, the Parties agree that the aforementioned fee structure shall not automatically be deemed to govern such new category of clients and that a mutually agreeable fee structure for such clients shall be discussed in good faith.

### VIII. Accounting

The Parties acknowledge the following:

- The classification of ISB clients and the corresponding applicable percentages shall be determined by the Parties in good faith.
- Tracking and maintenance of the BE Budget and MS Budget shall be collectively performed by the Parties in good faith.
- BE and MS may choose to allocate equally among them those expenses that are attributable to Existing Clients, as well as any cross-budget contributions deemed necessary to facilitate the recruitment and/or managing of a potential or current client.
- Reimbursements and applicable expense reports shall be a) coded pursuant to reasonable ISB policy and procedures; and b) submitted and completed in a timely fashion, but no more than thirty (30) days after the date of the applicable expense and the date an applicable expense report is requested by ISB. The Parties agree that any BE and/or MS expenses incurred since the beginning of the First ISB Year through the date of the signing of this Agreement, which have not been submitted and/or reimbursed as of the date of the signing of this Agreement, will still be honored and reimbursed by ISB. Such reimbursement shall occur on a date to be determined by ISB in its sole discretion.
- Collection of ISB Revenues shall be jointly performed by the Parties in good faith.

### IX. Termination/Dissolution

Any termination and/or dissolution shall require no less than thirty (30) days notice by the terminating Party/Parties, unless termination is "for cause," to be determined in good faith by the terminating Party/Parties, in which termination shall be immediate. The Parties may mutually determine a different notification of termination timetable at any time.

If there is termination and/or dissolution, in any manner, then ISB shall receive in perpetuity, pursuant to the Termination/Dissolution schedule below, the following percentages of gross revenue derived from and attributable to Existing Clients (who become former ISB Clients) successfully received, directly or indirectly, by ESM and/or MS and/or BE individually. For Future Clients and Additional Clients (who become former ISB Clients), the applicable percentages pursuant to this Agreement shall control. MS and BE each acknowledge that a) ISB shall be entitled to the applicable percentages of revenue if ESM and/or MS and/or BE benefit financially from any former ISB Clients, in any capacity and in any manner whatsoever, whether for its/his own benefit or for the benefit of any other person or entity; b) the

8

ESM/BE  ESM/MS  BE  MS  ISB

conditions of this paragraph shall be imputed and therefore apply to any future employer or individual or entity engaging or retaining ESM and/or MS and/or BE who benefit financially from such former ISB Clients; c) and prior to ISB receiving the percentage of gross revenue as described below and prior to ESM and/or MS and/or BE individually, directly or indirectly, receiving any revenue derived from any clients whatsoever, including without limitation Existing Clients (who become former ISB Clients), ISB shall first receive any and all funds it has paid for or on behalf of ESM, BE and/or MS individually, as the case may be, including without limitation the ESM Payment in full, that has not been previously offset by applicable ISB Revenue and/or ESM Revenue – ISB shall first be "made whole" and has a first priority interest in being "made whole", with the mutual understanding of all Parties that any such payment arrangement shall be structured in such a way so as to allow MS and BE to maintain a normal standard of living. For example, if upon termination/dissolution and if and only if the ESM Payment has been recouped by ISB in full (i) BE is operating Fifty Thousand Dollars ($50,000.00) over BE Budget and (ii) MS is operating at or under MS Budget, ISB shall be made whole out of the share of ISB Revenues and/or ESM Revenues that are attributable to BE without affecting the ability of MS to receive the share of ISB Revenues and/or ESM Revenues that belong to MS.

In addition, if a scenario occurs whereby BE or MS remains with ISB but not the other, then the terms of this Agreement shall continue to apply as if both BE and MS remain with ISB, including without limitation, the recovery of any and all aggregate operating losses of ESM, as appropriately attributed to BE and/or MS, as the case may be, by ISB prior to any compensation increases or profit distribution. For example, if upon termination/dissolution and if and only if the ESM Payment has been recouped by ISB in full (i) BE is operating Fifty Thousand Dollars ($50,000.00) over BE Budget and remains with ISB and (ii) MS is operating at or under MS Budget and leaves ISB, ISB shall be made whole out of the share of ISB Revenues and/or ESM Revenues that are attributable to BE without affecting the ability of MS to receive the share of ISB Revenues and/or ESM Revenues that belong to MS. Furthermore, the Parties acknowledge that, in such a specific scenario whereby BE or MS remains with ISB but not the other, the following shall occur: a) the Party, either BE or MS as applicable, who no longer remains with ISB, shall not receive any revenue, directly or indirectly, derived from any clients whatsoever, including without limitation Existing Clients (who become former ISB Clients) until ISB recoups both the ESM Payment in full AND any and all funds it has paid for or on behalf of the Party, either BE or MS as applicable, who no longer remains with ISB, that has not been previously offset by applicable ISB Revenue and/or ESM Revenue – ISB shall first be "made whole" and has a first priority interest in being "made whole", with the mutual understanding of all Parties that any such payment arrangement shall be structured in such a way so as to allow the departing party to maintain a normal standard of living, b) ISB shall only share in ISB Profits and/or ESM Profits from Existing Clients (and Existing Clients only) beginning with the first dollar above Two Hundred Forty Thousand Dollars ($240,000.00); AND c) the Party, either BE or MS as applicable, who no longer remains with ISB, shall have any and all future compensation owed to him by ISB attributable to Existing Clients reduced by Twelve and One Half Percent (12 ½ %), based upon a maximum of One Hundred Twenty Thousand Dollars ($120,000.00) or Fifteen Thousand Dollars ($15,000.00).

Lastly, the Parties acknowledge the following: a) any fees due ISB or ESM (collectively both BE and MS) as a result of termination/dissolution by ISB or ESM (collectively both BE and MS), as applicable, shall be calculated based on the gross amount, not the net amount; b) however, if a scenario occurs whereby BE or MS remains with ISB but not the other, then any fees due the Party, either BE or MS as applicable, who no longer remains with ISB, shall be calculated based on the net amount, not the gross amount; and c) if a termination/dissolution scenario occurs whereby the provisions above are unclear, then the Parties agree to determine an equitable resolution in good faith that captures the intent of this Agreement.

Termination/Dissolution Schedule

Zero Percent (0%) if termination/dissolution occurs between the Termination Effective Date and March 31, 2012.
Five Percent (5%) if termination/dissolution occurs between April 1, 2012 and September 30, 2012.
Ten Percent (10%) if termination/dissolution occurs between October 1, 2012 and September 30, 2013.
Fifteen Percent (15%) if termination/dissolution occurs between October 1, 2013 and September 30, 2014.
Twenty Five Percent (20%) if termination/dissolution occurs between October 1, 2014 and September 30, 2015.
Twenty-Five Percent (25%) if termination/dissolution occurs any time after October 1, 2015.

X.  Other Documents / Long-Form Agreement

9

ESM/BE   ESM/MS   BE   MS   ISB

BE and MS agree to sign additional reasonable documents in good faith relating to the terms and intent of this Agreement, if requested by and in the sole discretion of ISB, to clarify any conditions and/or stipulations contained herein. In addition, additional reasonable provisions shall be negotiated in good faith as part of a long-form agreement at the request of ISB or ESM.

### XI. Prior Agreements

This Agreement supersedes any prior agreements and understandings between the Parties and any conflicting language between any prior agreement or understanding and this Agreement shall be controlled by this Agreement. In addition, to eliminate any doubt, any agreement entered into or executed by the Parties in the past was officially terminated as of the Effective Date.

### XII. General Provisions

If any provision of this Agreement is deemed to be void and unenforceable, that provision shall be omitted only to the extent necessary to treat this Agreement as valid and enforceable and the remainder of this Agreement shall remain in full force and effect.

This Agreement cannot be modified without the express written consent of both Parties.

This Agreement shall be governed by and construed as to the validity, enforcement, interpretation, construction, effect and in all other aspects by the laws of the State of Florida.

ESM, BE and/or MS may not sell, assign or pledge this Agreement or rights or obligations hereunder to any other individual or entity except with the prior written consent of ISB. If ISB sells, assigns or pledges this Agreement or rights or obligations hereunder to any individual or entity, then ESM, BE and/or MS, as applicable, shall be permitted to offer its input regarding the sale, assignment or pledge and such input shall be considered in good faith by ISB.

This Agreement shall not be construed in favor of or against either Party but shall be construed as if both Parties prepared this Agreement.

The Parties failure to act with respect to a breach by the non-breaching Party shall not be deemed to be or constitute a waiver of the non-breaching Party's right to act with respect to subsequent or similar breaches.

The Parties acknowledge that this Agreement is a legal document and that each Party has been advised to obtain the advice of legal counsel in connection with its review and execution of this Agreement. Each Party covenants that it will not deny the enforceability of this Agreement on the basis that it elected not to obtain legal counsel to review and approve this Agreement.

This Agreement may be executed in counterparts, each of which shall be deemed to be an original but all of which when taken together, shall constitute one and the same agreement.

[Signatures are on the following page]

ESM/BE   ESM/MS   BE   MS   ISB

The Parties have caused this Agreement to be executed and by their signature agree to be bound thereto as of the Effective Date.

ISB: _____
Mitch Frankel c/o ISB

ESM: _____
Brian Elfus ("BE") c/o ESM

_____
Michael Siegel ("MS") c/o ESM

_____
Brian Elfus ("BE"), individually

_____
Michael Siegel ("MS"), Individually

11

ESM/BE ESM/MS   BE   MS   ISB

## ADDENDUM A

| Player | Team |
|---|---|
| Mildon Ambres | Lleida, Spain |
| Connor Atchley | NBDL |
| George Banks | Available |
| David Bell | Hagen, Germany |
| Elton Brown | Netanya, Israel |
| Justin Cage | Mons, Belgium |
| Keith Cothran | Available |
| Tony Crocker | Albacomp, Hungary |
| Chris Davis | NBDL |
| Corsley Edwards | Cedevita, Croatia |
| Tyrone Grant | Available |
| Sek Henry | Akita, Japan |
| Ron Howard | Netanya, Israel |
| Brandon Johnson | NBDL |
| Tyren Johnson | Aalstar, Belgium |
| Garth Joseph | Available |
| Dwight Lewis* | Mures, Romania |
| Nick Lewis | Iraklis, Greece |
| Dominick Martin | Lleida, Spain |
| Ahmad Nivins | Injured |
| Lukasz Obrzut | Available |
| Kevin Owens | Available |
| B.J. Raymond | Anibal, Lebanon |
| Jeff Rogers | Available |
| Derrick Roland | NBDL |
| Aerick Sanders | Portugal |
| Marco Sanders | Available |
| Ernest Scott | Peristeri, Greece |
| Kahiem Seawright | Leon, Spain |
| Julian Sensley | Peristeri, Greece |
| Donald Sloan | NBDL |
| Kyle Spain | NBDL |
| Lindsay Tait | Available |
| Eric Taylor | Siarka, Poland |
| Tyrus Thomas | Charlotte, NBA |
| Lamonte Ulmer | NBDL |
| John Vaughn | Available |
| Judson Wallace | Gran Canaria, Spain |
| Luke Whitehead | Available |
| Leon Williams | Strasbourg, France |
| James Wright | Heidelberg, Germany |
| Avis Wyatt | AEL, Cyrus |

* to be discussed

| Coach | Team |
|---|---|
| Will Brown | Albany, NCAA |
| Randy Livingston | NBDL |
| Nate Tibbetts | NBDL |

ESM/BE ESM/MS  BE  MS  ISB