FILED: NEW YORK COUNTY CLERK 12/27/2017 03:37 PM INDEX NO. 161430/2017
NYSCEF DOC. NO. 11 RECEIVED NYSCEF: 12/27/2017

Case 9:18-cv-80752-RS   Document 1-11   Entered on FLSD Docket 06/11/2018   Page 1 of 2
12/22/2017 Status Report - Peter Ginsberg

# Status Report

Peter Ginsberg

Sat 8/26/2017 6:50 PM

To: Elliot Levine <elevine@levsel.com>;

Elliot

I want to confirm our conversation the other day and developments with ESM.

In contemplation of my conversations with Siegel's and Elfus' attorneys, you confirmed that, while the Impact deal has not closed, the Sutton entities (I am not sure of the identity of the entity involved but assume it is a new entity created for this purpose) own the debt formerly owned by Cobalt and therefore own the revenue stream. My understanding is that the Cobalt transaction essentially encompassed the purchase of the ISM revenue stream and that the ISM revenue stream is guaranteed by ISB's revenue stream. (Mitch formerly also personally guaranteed the Note but I gather that was released by the Sutton entities.) You also told me that UCCs have been filed on all the receivables.

Regarding my conversations with Siegel's and Elfus' attorneys, you suggested that I empathize that ISB has no right to the expected fees and commissions from its players (absent ISM's revenue stream covering the debt, I assume), and thus Elfus' claim for hundreds of thousands of dollars of fees and commissions is an empty demand. When I discussed this with Elfus' attorney, he was clearly disturbed (even though I had reviewed these facts with him at least twice before). He asked if that meant that Elfus would be offered no money. I told him that it was not my call but certainly his inflated demands were too unrealistic to warrant a counterproposal.

I also told Elfus' attorney, as you and I had discussed, that we are not prepared to separate Elfus and Siegel, that Siegel owes significant fees to ISB from Galloway and, notwithstanding the fact that Elfus and Siegel have resolved between them how to divide future fees, that did not bind either ISB or the Sutton entities to dealing with them separately. I asked Elfus' attorney if he had negotiated an indemnification agreement with Siegel relating to Galloway and, from his silence, I assume the answer is no.

Elfus has demanded the back-up information supporting Impact's contention that Elfus owes significant money back to ISM. You and I agreed that Elfus has the right to that information and I communicated to his attorney that we would make the information available. I asked Elfus' attorney to identify for me precisely what he would like to see.

I expect to hear back from Elfus' attorney early next week. I can't predict whether he will decide to keep the lines of communications open or, instead, seek either Union intervention (which I don't think is permitted under the CBA or the Union Regulations) or judicial intervention. I explained to him that litigation would not intimidate anyone on our side and that we certainly would counterclaim for at least an amount approximating $300k in back expenses.

I have previously spoken with Siegel's attorney and demanded the fees and commissions owed to ISB but, as is often the case, I was not able to reach him.

Regarding my legal fees incurred from April 2016, you agreed that the fees are owed from the Sutton entities but said that Jeff has been preoccupied with other personal matters at the moment so you did not yet have authorization to pay them. You did say, however, that $50,000 would be wired to me now. I had hoped to receive that wire last week but didn't. Please confirm when the $50,000 will be made and propose a schedule for payment of the remainder of the fees.

Please let me know your thoughts about the above. I will be back from the west coast on Monday night and then going back to San Diego on Wednesday night. Thank you.

Peter

Peter R. Ginsberg Law, LLC
80 Pine Street
33rd Floor
New York, New York 10005
(646) 374-0029
(646) 335-0202 (telefax)