UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 18-cv-80752-BLOOM/Reinhart

BRIAN ELFUS,

      Plaintiff,

v.

IMPACT SPORTS BASKETBALL LLC,
*et. al.*,

      Defendants.           /

## ORDER

**THIS CAUSE** is before the Court upon Third-Party Defendant Michael Siegel's ("Siegel") Motion to Dismiss Third-Party Complaint, ECF No. [56] ("Motion"). The Court has reviewed the Motion, Defendant/Third-Party Plaintiff Impact Sports Basketball LLC ("ISB") and Defendant/Third-Party Plaintiff JS Sports Funding LLC ("JS") (collectively, "Third-Party Plaintiffs") Responses, ECF Nos. [57] and [58], and the record in this case.[1] For the reasons set forth below, the Motion is denied.

**I. Background**

Plaintiff/Counter-Defendant Brian Elfus ("Elfus") filed an Amended Complaint against Defendants ISB, JS, Impact – A Sports Management Company, and J&J Sports Agency MM LLC (collectively, "Defendants") on August 22, 2018. ECF No. [35]. Elfus, a sports agent, asserts a breach of contract claim based on Defendants' failure to pay amounts owed pursuant to an agreement between Elfus and ISB (the "ISB Agreement"). *Id.* at ¶¶ 11, 75-85.

Third-Party Plaintiffs filed Answers to the Amended Complaint along with

---

[1] Siegel did not file a reply, and the deadline to do so has passed.

Counterclaims and Third-Party Complaints against Elfus and Siegel. ECF Nos. [45] and [46]. Third-Party Plaintiffs assert breach of contract claims against Elfus and Siegel for failure to make payments owed pursuant to the ISB Agreement. On October 28, 2018, Siegel filed the Motion, seeking to dismiss the Third-Party Complaints for lack of personal jurisdiction. Attached to the Motion, Siegel filed a Declaration detailing his limited connections to Florida. ECF No. [56-1] ("Siegel Decl."). In Response to the Motion, ISB submitted a Declaration of the founder and owner of ISB, Mitchell Frankel, concerning the formation of the ISB Agreement and Siegel's and Elfus's subsequent business conduct relating to Florida. ECF No. [58-1] ("Frankel Decl.").

**Legal Standard**

"In a motion to dismiss for lack of personal jurisdiction, a court must accept the facts alleged in plaintiff's complaint as true, to the extent that they are not contradicted by defendant's affidavits." *Kim v. Keenan*, 71 F. Supp. 2d 1228, 1231 (M.D. Fla. 1999) (citing *Cable/Home Commc'n Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990)). "Once the plaintiff pleads sufficient material facts to form a basis for in personam jurisdiction, the burden shifts to the defendant to challenge plaintiff's allegations by affidavits or other pleadings." *Carmouche v. Carnival Corp.*, 36 F. Supp. 3d 1335, 1388 (S.D. Fla. 2014), *aff'd*, *sub nom*, *Carmouche v. Tamborlee Mgmt., Inc.*, 789 F.3d 1201 (11th Cir. June 15, 2015). "If the defendant provides sufficient evidence, 'the burden shifts to the plaintiff to prove jurisdiction by affidavits, testimony or documents.'" *MPS Entm't, LLC v. Headrush Apparel, Inc.*, 2013 WL 5446543, at *2 (S.D. Fla. Sept. 30, 2013) (quoting *Thomas v. Brown*, 504 Fed. App'x 845, 847 (11th Cir. 2013)). Through this lens, the Court addresses the instant Motion.

**II. Discussion**

A. <u>Personal Jurisdiction</u>

A federal court sitting in diversity must undertake a two-step inquiry to determine whether personal jurisdiction exists: first, it must determine whether the exercise of jurisdiction is appropriate under the state long-arm statute; and, second, it must ensure that jurisdiction does not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Horizon Aggressive Growth, L.P. v. Rothstein-Kass, P.A.*, 421 F.3d 1162, 1166 (11th Cir. 2005); *Two Worlds United v. Zylstra*, 46 So.3d 1175, 1177 (Fla. 2d DCA 2010) ("In order to establish personal jurisdiction over a nonresident defendant, a plaintiff must satisfy a two-part test . . . whether the complaint alleges sufficient jurisdictional facts to satisfy Florida's long-arm statute, section 48.193 . . . [and] whether it has been demonstrated that the defendant has had sufficient minimum contacts with Florida to satisfy due process requirements."). "When a federal court uses a state long-arm statute, because the extent of the statute is governed by state law, the federal court is required to construe it as would the state's supreme court." *Lockard v. Equifax, Inc.*, 163 F.3d 1259, 1265 (11th Cir. 1998).

*1. Florida Long-Arm Statute*

Florida's long-arm statute, Florida Statute section 48.193, "addresses both specific and general jurisdiction." *Caiazzo v. Am. Royal Arts Corp.*, 73 So. 3d 245, 250 (Fla. 4th DCA 2011). General jurisdiction exists where the defendant engages in "substantial and not isolated activity" within Florida, "whether or not the claim arises from that activity." Fla. Stat. § 48.193(2). This requires "continuous and systematic general business contact" with Florida. *Woods v. Nova Cos. Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999). "The reach of this provision extends to the limits on personal jurisdiction imposed by the Due Process Clause of the Fourteenth

Amendment." *Fraser v. Smith,* 594 F.3d 842, 846 (11th Cir. 2010) (citation omitted). Specific jurisdiction exists where the non-resident defendant engages in specific actions enumerated in Florida Statutes, section 48.193(1), which give rise to the stated cause of action. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411 n. 8 (1984) ("It has been said that when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising 'specific jurisdiction' over the defendant."). This list of actions includes, in pertinent part, "[b]reaching a contract in this state by failing to perform acts required by the contract to be performed in this state." Fla. Stat. § 48.193(1)(a)(7).

Courts have held that Florida's long-arm statute is satisfied pursuant to Section 48.193(1)(a)(7) where a non-resident defendant breaches a contractual requirement that payment be made in Florida. *See, e.g.*, *Aspsoft, Inc. v. WebClay*, 983 So. 2d 761, 766 (Fla. 5th DCA 2008); *Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1250 (11th Cir. 2000) (holding that defendant's failure to pay plaintiff an amount due under contract satisfies Florida's long-arm statute). Here, Third-Party Plaintiffs allege that Siegel failed to make payments owed to ISB under the ISB Agreement. ECF No. [45] at ¶¶ 9-10; ECF No. [46] at ¶¶ 32-37. ISB is a Florida Limited Liability Company. Frankel Decl. at ¶ 2. Moreover, JS has submitted unrebutted testimony that all amounts earned by Siegel under the ISB Agreement were routed through Florida and all payments made to Siegel as required by the ISB Agreement came from Florida. Frankel Decl. at ¶ 14.

Third-Party Plaintiffs argue that Siegel's failure to make payment in Florida owed under the ISB Agreement allows the Court to reach Siegel under the Florida long-arm statute. Siegel has not made any argument nor provided any case law to the contrary. The Court agrees with

Third-Party Plaintiffs, and finds that Florida's long-arm statute is satisfied under Section 48.193(1)(a)(7).

### 2. *Jurisdiction Comports with Constitutional Due Process*

To determine whether the exercise of specific jurisdiction affords due process, the Court applies a three-part test. *See Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). First, the Court considers whether the plaintiff has established that its claims "arise out of or relate to" at least one of the defendants' contacts with the forum. *Id*. (internal quotation marks omitted). Second, the Court asks whether the plaintiff has demonstrated that the defendants "purposefully availed" themselves of the privilege of conducting activities within the forum state. *Id.* (internal quotation marks omitted). If the plaintiff carries its burden of establishing the first two prongs, the Court next considers whether the defendant has "ma[de] a compelling case that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice." *Id.* (internal quotation marks omitted).

Siegel argues that Third-Party Plaintiffs cannot establish his minimum contacts with this jurisdiction because he did not execute the ISB Agreement in Florida and an individual's contract with a Florida corporation alone does not automatically establish sufficient minimum contacts with Florida. Additionally, Siegel points to his limited connection with Florida, specifically, that he lives in Pennsylvania, in the last eight years has travelled to Florida four times in connection with the ISB Agreement and twice for vacation, has conducted no other business in Florida, and does not own an office in Florida.

Third-Party Plaintiffs counter that prior to and after executing the ISB Agreement, Siegel travelled to Florida to conduct business in connection with the ISB Agreement. Frankel Decl. at ¶¶ 9-11 Indeed, Mitchell Frankel met with Siegel in Florida on multiple occasions to address

business conducted pursuant to the ISB Agreement. *Id.* at ¶ 11. Also, Elfus, who was Siegel's business partner at the time, travelled to Florida an additional 15 to 20 times in order to conduct business on behalf of himself and Siegel. *Id.* at ¶ 12. Additionally, Siegel communicated telephonically with persons associated with ISB dozens of times about the ISB agreement. *Id.* at ¶ 13.

The Court finds that Siegel has sufficient contacts with Florida to support personal jurisdiction in this case. As Siegel admits in his own declaration:

> The first time I travelled to Florida was at the specific request of Mitchell Frankel, the President of ISB, to discuss the terms of the proposed ISB Agreement with representatives of ISB.
>
> The second and third times I traveled to Florida were at the specific request of Mitchell Frankel to discuss business strategies.
>
> The fourth time the travel to Florida was at the specific request of Mitchell Frankel to talk about clients.

Siegel Decl. at ¶¶ 12-15. Siegel's travel, meetings in, and phone calls to Florida in which he conducted business relating to the ISB Agreement clearly relate to the claims against Siegel for breaching that contract. Moreover, the connections between Siegel and Florida are not "random, fortuitous, or attenuated" contacts but are substantial activities which show that Siegel "purposefully directed his activities at residents of the forum, and the litigation results from alleged injuries that "arise out of or relate to" those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 480 (1985) (internal quotations and citations omitted).

The Court finds that the claims against Siegel "arise out of or relate to" Siegel's contacts with Florida and that Siegel purposefully availed himself of the privilege of conducting activities in Florida. The Court does not reach this conclusion based solely on the fact that Siegel entered into a contract with a Florida corporation, as posited in Siegel's Motion, but based on the entirety of his contacts with Florida relating to the ISB Agreement as described above. Additionally,

Siegel has made no showing that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice.

## III. Conclusion

Third-Party Plaintiffs have successfully alleged that the Court has personal jurisdiction over Siegel. Accordingly, it is **ORDERED AND ADJUDGED** that Siegel's Motion to Dismiss, **ECF No. [56]**, is **DENIED**. Siegel shall answer the Third-Party Complaints, ECF Nos. [45] and [46], by **no later than February 4, 2019**.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 24th day of January, 2019.

**BETH BLOOM**
**UNITED STATES DISTRICT JUDGE**

Copies to:

Counsel of Record